IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LISA GABALDON,

       Plaintiff,

vs.                                                                Civ. No. 99-1487 JC/WWD

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing ("Motion") **[Doc. 15]**, filed February 14, 2002. Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act.

    2. Plaintiff applied for benefits on March 11, 1997, alleging a disability that commenced on January 18, 1991 due to various impairments involving her hands, feet, lower back, right knee and alopecia[1]. Tr. at 52, 59. In addition, Plaintiff claims that she experiences depression, anxiety and crying spells. Tr. at 40-41. Plaintiff was born on August 22, 1963, has a high school education, and has worked as a receptionist, hospital clerk and pharmacy clerk. Tr. at 40.

    3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the

---

    [1] Alopecia is baldness. DORLAND'S ILLUSTRATED MED. DICTIONARY 51 (26th ed.1981).

Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred when he concluded that Plaintiff's nonexertional limitations do not significantly alter her work capacity; (2) the ALJ erred in his credibility analysis; and (3) the ALJ failed to properly analyze the combined effects of Plaintiff's medical conditions. See Pl.'s Mem. in Support of Mot. **[Doc. 16]** at 2-3.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. §423 (d)(1)(A)); see also § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. In this case, the ALJ found that Plaintiff was not disabled at step four of the sequential analysis, concluding that "Ms. Gabaldon could return to her previous job as an office clerk." Tr.

2

at 19. At step four, the Plaintiff bears the burden of proving an inability to return to past relevant work. Andrade v. Secretary of Health & Hum. Servs., 985 F.2d 1045, 1050-51 (10th Cir. 1993).

        8. Plaintiff testified that she left her job as an office clerk in January of 1991 because her "right hand started getting really swollen . . . and then the left hand." Tr. at 244, 248. On January 4, 1991, Emmet Thorpe, M.D., diagnosed Plaintiff as having a "[h]istory of recurrent . . . joint swelling/discomfort . . . considered to be rheumatological in origin," although he noted that "there are no specific tests which are diagnostically positive" of a rheumatological disorder. Tr. at 97, 99. Various radiological studies of Plaintiff's hands and feet performed in 1989 and 1990 revealed no abnormalities. Tr. at 200-03. Several medical records from First Choice Community Healthcare indicate that Plaintiff complained of hand or wrist pain in 1995 and 1996. Tr. at 154, 161. During this time, Plaintiff received three referrals or consults to an orthopedic clinic and missed one of these appointments. Tr. at 151, 153, 154. On January 6, 1998, a radiological examination of Plaintiff's hands revealed osteoporosis "consistent with early rheumatoid disease." Tr. at 226. On January 10, 1998, Robin Fishman, P.A., referred Plaintiff to a rheumatologist for further evaluation after noting the above radiological finding, along with a positive ANA of 1:40, a negative rheumatoid factor, and a normal sedimentation rate of 18. Tr. at 223, 225.

        9. At an administrative hearing held on April 8, 1998, Plaintiff stated that she has worn splints on both hands for approximately six years and attends therapy twice a week. Tr. at 248-49. Plaintiff contended that "[d]oing any type of work . . . . even the little things at the house" cause problems with her hands[2]. Tr. at 250. Plaintiff testified that she has frequent crying spells.

---

    [2]    Plaintiff stated that her hands become "swollen and painful" when she attempts "to do anything around the house." Tr. at 257.

3

Tr. at 265. Plaintiff also claims that she has pain in her lower back when she does "a lot of sitting down or standing too much." Tr. at 251. She takes Motrin for her back pain which "relieves some tension, but not all together." Tr. at 252. Plaintiff similarly stated that the Sulindac prescribed by Dr. Benj did not completely alleviate the pain in her hands. Tr. at 93, 263-64. Plaintiff also felt that her depression and anxiety had become worse, even though she was taking Imipramine.[3] Tr. at 264.

10. Plaintiff testified that she and her daughter had been living with Plaintiff's mother for about a year. Tr. at 254. Plaintiff estimated that in an eight hour day she could sit for about two hours and stand for about two hours. Tr. at 256-57. She stated that she could lift a gallon of milk, explaining that "[i]t's about it [sic] I can handle before my hand starts to hurt." Tr. at 257. Plaintiff testified that she tries to sweep, but it "aggravates my back and my hand." Tr. at 253. Plaintiff stated that she tries to help her mother with the laundry, sometimes makes the bed, and very rarely cooks or washes dishes. Tr. at 253-54. Plaintiff reads to her daughter, takes her daughter to the movies "at least [] twice a week," and watches television. Tr. at 255-56.

11. I will first address Plaintiff's allegation of error with respect to the ALJ's credibility analysis, because a finding of noncredibility potentially affects both the assessment of Plaintiff's nonexertional limitations and the evaluation of the combined effects of Plaintiff's impairments.

*Credibility analysis*

12. The ALJ found that Plaintiff's testimony failed to "credibly establish symptoms or functional limitations to the extent alleged." Tr. at 12. The Court ordinarily defers to the ALJ as

---

[3] Medical records from First Choice indicate that Plaintiff's symptoms of anxiety and depression had responded well to Imipramine in the past. Tr. at 135, 165, 169.

trier of fact on credibility. Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (citations omitted). "Credibility determinations are peculiarly the province of the finder of fact, [] and [the Court] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Hum. Servs., 898 F.2d 774, 777 (10th Cir. 1990); cited in Winfrey v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996).

13. Plaintiff contends that the ALJ determined that Plaintiff "does not have an impairment reasonably capable of producing the symptomology [sic] alleged." Pl.'s Mem. at 3. However, Plaintiff's apparent presumption that the ALJ discounted Ms. Gabaldon's testimony at the first step of the pain analysis framework set forth in Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987)[4] is incorrect.[5] Plaintiff also contends that the ALJ, in assessing credibility, should have considered the facts that Ms. Gabaldon "saw physicians regularly from 1991 . . . sought psychological treatment, and took various prescription medications." Pl.'s Mem. at 5. The ALJ is not required to make a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) (citing Kepler v. Chater, 68 F.3d 387, 391 (10th Cir.1995)). Moreover, a review of the ALJ's decision indicates that he did consider the factors listed by Plaintiff, in addition to other factors.

---

[4] The framework set forth in Luna requires a determination of the following: (1) whether Plaintiff established a pain producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Plaintiff's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Plaintiff's pain is in fact disabling. Luna, 834 F.2d at 163-64.

[5] The ALJ specifically found that Plaintiff does have "symptom-producing medical problems." Tr. at 12.

14. For example, the ALJ noted that although Plaintiff allegedly quit working because of difficulties with her hands, she also testified that she did not look for work following her marriage because she wished to stay home with her family.[6] Tr. at 13. The ALJ also found that Plaintiff's "treatment regime has been conservative" and that her "mental symptoms are amenable to treatment."[7] Tr. at 16, 17. The ALJ noted that Plaintiff told Dr. Greenbaum that she had "recently moved herself, her daughter, and all her belongings" into her parents' home and performed "most household chores, with some assistance from her parents."[8] Tr. at 17. The ALJ concluded that Plaintiff's "actual activity level appears to be considerably more extensive than what she has alleged." Tr. at 17. Thus, the ALJ properly considered many of the factors approved for assessing Plaintiff's credibility and set forth the specific evidence on which he relied.

15. "The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole. See Ellison v. Sullivan, 929 F.2d 534, 537 (10th Cir.1990)." Rice v. Apfel, 990 F.Supp. 1289, 1294 (D.Kan. 1997). Because substantial evidence supports the ALJ's credibility determination, it should be affirmed.

*Plaintiff's nonexertional limitations and work capacity*

16. As previously noted, the ALJ found that Plaintiff's testimony failed to "credibly establish symptoms or functional limitations to the extent alleged." Tr. at 12. The ALJ

---

[6] The motivation of the Plaintiff is an appropriate factor to consider in assessing the credibility of her testimony. See Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

[7] The levels of medication taken and their effectiveness are also appropriate factors to consider in assessing credibility. See Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

[8] The ALJ may consider the claimant's activities [along with other factors] in discounting subjective complaints. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); Talbot v. Heckler, 814 F.2d 1456, 1462 (10th Cir. 1987).

6

determined that Plaintiff was capable of performing light work. Plaintiff contends that the ALJ erred when he concluded that Plaintiff's nonexertional limitations did not significantly alter her work capacity.[9] However, because the ALJ properly discounted Plaintiff's testimony regarding symptoms and limitations, the ALJ did not err in concluding that Plaintiff's nonexertional impairments did not pose significant limitations to her work capacity.

*Combined effect of Plaintiff's impairments*

17. Finally, Plaintiff alleges that the ALJ failed to consider her impairments in combination.[10] The Social Security Act requires that the Commissioner consider the combined impact of multiple impairments throughout the disability determination process. Zebley by Zebley v. Bowen, 855 F.2d 67, 76 (3d Cir. 1988), aff'd, 493 U.S. 521 (1990). Medical equivalence, however, must be based on medical findings. 20 C.F.R. §§ 404.1526; 416.926.

18. At step two, the ALJ found that Plaintiff had several severe impairments, including multiple body aches and pains, depression, and anxiety attacks. Tr. at 12. At step three, the ALJ examined the medical findings and the listings for section 1.00 (musculoskeletal system) and section 12.00 (mental disorders) of Appendix 1. However, the medical findings relating to Plaintiff's impairments did not meet the required criteria for any listed impairment. See, e.g., Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (noting that the record offered no medical findings of "equal or greater significance . . . relating [to] the same impairment"). Moreover,

---

[9] Although the ALJ found no more than slight limitations in most areas of mental functioning, he noted that Plaintiff "may have a moderate degree of difficulty in terms of interacting with others." Tr. at 18.

[10] Because the ALJ found severe impairments at step two of the sequential analysis, I assume that Plaintiff alleges error at step three, where the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment. See Tr. at 12.

Plaintiff does not suggest how Plaintiff's impairments meet any of the listings contained in Appendix 1. The ALJ correctly concluded that the medical evidence did not support the existence of impairments which met or equaled in severity any listed disorder.

19. In addition, the ALJ's consideration of Plaintiff's testimony, together with his discussion of the medical evidence and Plaintiff's various impairments, was sufficient to demonstrate that the ALJ considered the combined effect of Plaintiff's impairments. Campbell v. Bowen, 822 F.2d 1518, 1521 (10th Cir. 1987); see also Ellison v. Sullivan, 929 F.2d 534, 537 (10th Cir. 1990). Consequently, the ALJ did not err in his consideration of the combined effect of Plaintiff's impairments.

20. In sum, I find that (1) the ALJ did not err in the credibility analysis; (2) the ALJ did not err in finding that Plaintiff's nonexertional impairments did not significantly alter her work capacity; and (3) the ALJ did not err in his consideration of the combined effect of Plaintiff's impairments.

**Recommended Disposition**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[Doc. 15]** be denied and that this cause be dismissed with prejudice. Timely objections to the foregoing proposed findings and recommended disposition may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE